
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| CHAN HEALTHCARE GROUP, PS, a Washington professional services corporation, | ) ) ) ) | No. 75541-2-I |
| Respondent, | ) ) | |
| v. | ) ) | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY and LIBERTY MUTUAL INSURANCE COMPANY, foreign insurance companies, | ) ) ) ) ) ) | PUBLISHED OPINION FILED: December 11, 2017 |
| Petitioners. | ) ) | |

VERELLEN, C.J. — This appeal turns on the standard governing a due process collateral attack on a sister state's resolution of a multistate class action. Under full faith and credit principles, a collateral attack in Washington fails if that same due process challenge was raised, litigated, and decided in the sister state. Under these circumstances, Washington courts do not second guess the analysis and resolution by the trial and appellate courts in the sister state.

Because the substance of respondent's due process claim of inadequate representation was raised, litigated, and decided in Illinois, the Illinois settlement is entitled to full faith and credit.

Therefore, we reverse.

FACTS

This appeal concerns use by Liberty Mutual Insurance Company (Liberty) of a computerized database to determine the amounts payable for treatments covered by personal injury protection (PIP) coverage under automobile insurance policies. Washington's PIP statute requires automobile insurers to pay all reasonable and necessary medical expenses incurred by the insured.[1] Insurers must "conduct[ ] a reasonable investigation" before refusing to pay claims.[2] Liberty sets the benchmark reasonable medical charges payable using the FAIR Health database, reflecting other healthcare provider charges in the same geographic area.

Liberty's use of the FAIR Health database was previously challenged in Lebanon Chiropractic Clinic v. Liberty Mutual Insurance Company, a multistate class action lawsuit litigated in Illinois.[3] The class included Washington providers. The lawsuit alleged that Liberty's use of the FAIR Health database was unfair under the Illinois Consumer Fraud and Deceptive Business Practices Act[4] and other states' equivalent acts, including the Washington Consumer Protection Act.[5] Chan, a Lebanon class member, received reasonable notice and did not opt out.

---

[1] RCW 48.22.095(1), .005(7).

[2] WAC 284-30-330(4).

[3] No. 5-15-0111, 150111, 2016 IL App (5th) 150111-U, 2016 WL 546909 (Feb. 9, 2016) (unpublished).

[4] 815 ILL. COMP. STAT. ANN. 505/1 (2007).

[5] Ch. 19.86 RCW.

In October 2014, the parties in <u>Lebanon</u> reached a proposed class settlement. In January 2015, class member Dr. David Kerbs, a Washington chiropractor, filed an objection to the proposed settlement asserting, among other things, "Lebanon Chiropractic Clinic is an inadequate class representative for Washington providers and has a conflict of interests with Washington providers."[6] Dr. Kerbs argued the conflict of interest was the result of differences between Illinois and Washington's consumer protection statutes.

In February 2015, following a fairness hearing, the Illinois court entered a final order and judgment approving settlement and dismissing the case. In the order, the court acknowledged Dr. Kerbs' objection, overruled all objections to the proposed settlement, and determined the named plaintiff was an adequate representative.[7]

Dr. Kerbs appealed the judgment to the Appellate Court of Illinois. He specifically challenged the adequacy of representation resulting from conflict between the Illinois and Washington's consumer protection and PIP statutes. In February 2016, the Illinois appellate court affirmed the trial court in an unpublished opinion.[8]

In September 2015, while Dr. Kerbs' appeal was still pending in Illinois, Chan Healthcare Group, PS (Chan) filed the current case against Liberty in King

---

[6] Clerk's Papers (CP) at 4042.

[7] <u>See</u> CP at 4155-56.

[8] <u>Lebanon Chiropractic</u>, 2016 WL 546909, at *15.

County Superior Court. Chan alleged Liberty's reliance on the FAIR Health database constituted an unfair practice under the Washington Consumer Protection Act.

Chan moved for a declaratory judgment that Lebanon did not preclude the claims because the class representative was an inadequate representative. Liberty moved for summary judgment seeking dismissal of the case. The superior court declined to give full faith and credit to the Lebanon settlement and found the named plaintiff in Lebanon did not adequately represent the interests of Washington providers. The trial court granted Chan's motion and denied Liberty's motion.

We granted Liberty's motion for discretionary review.

## ANALYSIS

Liberty contends the trial court erred when it failed to give full faith and credit to the Lebanon settlement.

We review a court's refusal to accord full faith and credit to a foreign judgment de novo.[9] The full faith and credit clause of the United States Constitution requires states "to recognize judgments of sister states."[10] A state court judgment in a class action is "presumptively" entitled to full faith and credit

---

[9] OneWest Bank, FSB v. Erickson, 185 Wn.2d 43, 56, 367 P.3d 1063 (2016).

[10] Id. at 55 (citing U.S. CONST. art. IV, § 1).

from the courts of other jurisdictions.[11] "[P]arties can collaterally attack a foreign order 'only if the court lacked jurisdiction or constitutional violations were involved.'"[12] Specifically, "a foreign state is not required to give full faith and credit to a judgment against an affected party who did not receive due process when the judgment was entered."[13] Due process in a class action requires (1) "'reasonable notice' that apprises the party of the pendency of the action, affords the party the opportunity to present objections, and describes the parties' rights," (2) the opportunity to opt out, and (3) "a named plaintiff who adequately represents the absent plaintiffs' interests."[14]

Here, there is no dispute Chan had adequate notice and did not exercise the right to opt out. The sole dispute is whether Chan can collaterally attack the Lebanon settlement for lack of adequate representation. We must decide, under full faith and credit, the standard for a collateral attack asserting lack of due process in a sister state's class settlement approval.

In In re Estate of Tolson, Division Two of this court considered whether a Washington court was bound in a probate proceeding to a prior determination by a California court that decedent was domiciled in California at date of death.[15]

---

[11] Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 374, 116 S. Ct. 873, 134 L. Ed. 2d 6 (1996).

[12] OneWest Bank, 185 Wn.2d at 56 (quoting State v. Berry, 141 Wn.2d 121, 128, 5 P.3d 658 (2000)).

[13] Nobl Park, L.L.C. of Vancouver v. Shell Oil Co., 122 Wn. App. 838, 845, 95 P.3d 1265 (2004).

[14] Id.

[15] 89 Wn. App. 21, 32, 947 P.2d 1242 (1997).

Division Two concluded that while "enforcement of a judgment under [the full faith and credit clause] can be challenged by a showing that the court rendering judgment lacked jurisdiction[,] . . . it is also well settled that if the jurisdictional question *has been litigated* in the rendering court, principles of res judicata attach," and that question cannot be relitigated on collateral attack.[16]

Our Supreme Court adopted a similar approach in OneWest Bank, FSB v. Erikson when considering "whether a Washington court must give full faith and credit to an Idaho court order encumbering Washington property."[17] "This case arose through OneWest Bank FSB's attempted foreclosure of Washington property based on a reverse mortgage that an Idaho court ordered through [the decedent's] conservatorship proceeding."[18] The decedent's daughter "challeng[ed] the foreclosure, claiming the reverse mortgage [was] void because she was the actual owner of the property and the Idaho court had no jurisdiction to affect Washington property."[19]

Our Supreme Court concluded, "[W]e cannot question [the decedent's] domicile because the personal jurisdiction issue was *already litigated and decided* in the Idaho conservatorship proceedings."[20] The court was persuaded the issue of jurisdiction was already litigated and decided because the record, chiefly the

---

[16] Id. (emphasis added).

[17] 185 Wn.2d 43, 55, 367 P.3d 1063 (2016).

[18] Id. at 47-48.

[19] Id.

[20] Id. at 57 (emphasis added).

Idaho court's docket entries, revealed the decedent "objected to personal jurisdiction in the Idaho court, but the court denied his objection and exercised jurisdiction over him."[21]

> Although we do not have the particular Idaho court order at issue, we have sufficient evidence that the Idaho court *considered* challenges to [the decedent's] domicile and *ruled* that it had jurisdiction to appoint a conservator over him. . . . There was enough evidence for the Idaho court to conclude it had sufficient contacts to exercise jurisdiction over [the decedent]. If [the daughter] wanted to challenge this determination, the Idaho court was the proper forum for doing so. She cannot collaterally attack that determination here.[22]

Limited collateral review of a sister state court's finding of jurisdiction as provided by Tolson and OneWest Bank is consistent with nonbinding federal authority addressing the scope of collateral review in the context of a due process challenge to a foreign court's class settlement approval.

In Epstein v. MCA, Inc., the Ninth Circuit addressed the effect of a Delaware state court judgment that approved a class action settlement releasing exclusively federal claims.[23] The Ninth Circuit rejected a broad, merit-based collateral review and held that collateral review is limited to "whether the *procedures* in the prior litigation afford the party against whom the earlier judgment is asserted a 'full and fair opportunity' to litigate the claim or issue."[24] Due process

---

[21] Id. at 58.

[22] Id. (emphasis added).

[23] 179 F.3d 641, 643 (9th Cir. 1999).

[24] Id. at 649 (emphasis added).

"does not require collateral *second-guessing* of those determinations and that review."[25]

Consistent with <u>Tolson</u>, <u>OneWest Bank</u>, and <u>Epstein</u>, we hold Washington courts do not relitigate questions of due process previously *raised, litigated, and decided* by a sister state court when approving a class settlement. To determine whether a due process issue has been previously raised, litigated, and decided, we consider (1) whether the specific due process objection was before the sister state court, (2) whether the parties presented briefing on the objection, and (3) whether the sister state court ruled on the objection. If, after conducting this limited collateral review we are reassured the sister state court litigated and decided the same due process objection currently raised, we will not second guess the determination of that court.[26]

Here, Chan reargues Dr. Kerb's contention that the class representative in <u>Lebanon</u> inadequately represented Washington providers, noting

> there are fundamental differences between the Washington and Illinois consumer protection acts (including the public interest impact prong in Washington and the more restrictive requirement in Illinois of intent); between the remedies available in Washington and Illinois (e.g. treble damages versus punitive; rates of interest in judgments); and most importantly in the substantive laws underlying the

---

[25] <u>Id.</u> at 648.

[26] The parties disagree about the significance of the Ninth Circuit decision in <u>Hesse v. Sprint Corporation</u>, 598 F.3d 581, 588 (9th Cir. 2010). At most, the <u>Hesse</u> decision recognizes that in the absence of any determination of adequate representation by the forum state, a collateral attack review of adequate representation is permissible. But here, the question of adequate representation of Washington class members was raised, litigated, and decided in both the Illinois trial and appellate courts.

[consumer protection act] claims of Washington and Illinois providers.[27]

But the same objection concerning lack of adequate representation was before the Illinois trial court in Lebanon. Dr. Kerbs objected to the proposed settlement because, among other things, "Lebanon Chiropractic Clinic is an inadequate class representative for Washington providers and has a conflict of interests with Washington providers."[28]

The parties in Lebanon presented briefing on that specific conflict of interest. In his written objection, Dr. Kerbs argued:

> Washington providers have rights and causes of action for relief under the Washington Consumer Protection Act not possessed or available to Lebanon as an Illinois provider. Lebanon could not adequately represent Washington providers and had a conflict of interests in obtaining benefits that benefited Lebanon but not Washington providers who get nothing under the Lebanon settlement and see key benefits and rights taken away from them.[29]

The court also received responses from Liberty and the class representative rebutting Dr. Kerbs' various objections. The class representative specifically addressed Dr. Kerbs' argument concerning differences between Illinois and Washington law:

> While [Dr. Kerbs and another objector] claim that a conflict exists, neither has specified one. Objector Kerbs fails to identify how rights under the Washington Consumer Protection Act are different. . . . In the end, there is no material difference or conflict, and both

---

[27] Resp't's Br. at 20.

[28] CP at 4042.

[29] CP at 4049-50.

Objectors simply argue that providers from their respective states have done or could do better.[30]

The record of the arguments made to the Illinois trial court is more detailed than the docket entries relied on in OneWest Bank.[31]

And the issue of adequate representation was decided by the Illinois trial court. In the written order approving class settlement, the court "overrule[d] all objections to the Stipulation and the proposed Class Settlement and approve[d] all provisions and terms of the Stipulation and the proposed Class Settlement in all respects."[32] The Illinois trial court also determined "Plaintiff Lebanon Chiropractic Clinic . . . and Class Counsel will fairly and adequately protect the interests of the Settlement Class."[33] In context, this was not a mere boilerplate finding of adequate representation.

Dr. Kerbs appealed, and the Illinois appellate court considered the same issue of inadequate representation stemming from alleged conflicts between Illinois and Washington law.[34]

In his brief to the Illinois appellate court, Dr. Kerbs renewed his specific argument concerning differences in available relief under Illinois and Washington

---

[30] CP at 4073.

[31] OneWest Bank, 185 Wn.2d at 58.

[32] CP at 4156.

[33] CP at 4154.

[34] See CP at 4671 (notice of appeal to appellate court of Illinois) ("Lebanon Chiropractic Clinic is an inadequate class representative for Washington providers and has a conflict of interest with Washington providers because Lebanon does not possess a Washington CPA claim and cannot obtain the broader relief available to Washington health care providers.").

law.[35] He argued the class representative had a conflict of interest with Washington providers because

> the Washington Act provides for treble damages, attorneys fees and litigation costs and prejudgment interest at the rate of 12% per annum on the award of actual damages. Lebanon did not have claims that would provide such relief. It was therefore in Lebanon's interests to negotiate a settlement with Liberty in which Washington providers got nothing.[36]

In response, Liberty Mutual claimed

> Dr. Kerbs' argument that the damages available under the Washington Consumer Protection Act are marginally greater than those available under the Illinois Consumer Fraud Act is legally irrelevant. Even if his damages calculations are correct, Dr. Kerbs fails to explain how such a difference creates antagonistic interests between Plaintiff and Washington providers.[37]

The class representative similarly argued, "Objector Kerbs has never identified any relief that Lebanon Chiropractic sought that is antagonistic to the interests of the Washington provider class members. . . In the end, Objector Kerbs simply argues that Washington providers *might* 'do better.'"[38]

The Illinois appellate court's unpublished opinion addressed Dr. Kerbs' adequate representation objection, described the appropriate legal standards for analyzing adequate representation, and rejected the claims:

---

[35] See CP at 4354 (Lebanon "has no claim that Liberty's reductions made to Washington provider bills using the FAIR Health database violated Washington insurance regulations, the Washington PIP or CPA.").

[36] CP at 4354-55 (emphasis omitted).

[37] CP at 349 (emphasis omitted).

[38] CP at 1738.

Kerbs argues the trial court abused its discretion in approving the settlement where Lebanon did not fairly and adequately protect the interests of the class members. . . . When evaluating whether the class representative can provide fair and adequate representation, the court must determine that the representative party is not seeking relief which is potentially antagonistic to the members of the class. . . .

Here, in support of his objection filed with the trial court, Kerbs identified the following relief that was sought by Lebanon that was antagonistic to the interests of the Washington providers: . . . that Washington law requires payment of all reasonable charges[,] and that Washington providers receive nothing under the Lebanon settlement.[39]

It is clear the Illinois appellate court was aware of and rejected Dr. Kerbs' argument concerning material differences between Washington and Illinois law.[40] The court observed that Kerbs had not demonstrated any "outcome-determinative differences in Washington law and Illinois law."[41]

Dr. Kerbs did not seek review by the Illinois Supreme Court. The Illinois state court system was the appropriate avenue for continuing to challenge the certifying court's determination of adequate representation.[42]

---

[39] Lebanon Chiropractic, 2016 WL 546909, at *13-14.

[40] Id. at 11 ("[I]n his appellate briefs, Kerbs notes that Illinois is an at-fault state where Washington is a no-fault state, Illinois has no comparable PIP statute requiring the payment of all reasonable medical expenses submitted, and Illinois has no comparable insurance regulation requiring insurers to investigate a PIP claim before refusing to pay a claim.")

[41] Id.

[42] See Nobl Park, 122 Wn. App. at 845, n.3 ("[A] party's right to due process is protected by the court certifying a class action and the court's reviewing subsequent appeals in the state issuing the judgment in such action; it is not the obligation of the courts of another state to collaterally review due process challenges.").

In essence, Chan asks this court to take on the role of the Illinois trial court deciding the issue of adequate representation. But we do not review de novo whether we would have found adequate representation as the Illinois trial court. Neither do we decide whether we would have affirmed the trial court determination of adequate representation sitting as the Illinois appellate court. And we do not consider whether we would have affirmed the appellate court's decision if we were the Illinois Supreme Court.

In conducting a full faith and credit analysis, we do not dwell on the precise rationale and analysis used by the sister state to resolve the due process claim. To allow an automatic de novo review by collateral attack whenever lack of due process is alleged would be contrary to full faith and credit principles emphasizing the importance of finality.

The scope of collateral attack is narrow. Our consideration of the argument and materials before the Illinois court is limited to whether the issue at hand was raised, litigated, and decided by that court. Chan contends the issues litigated in Illinois are completely different than the issues raised in Washington. But in Illinois, Dr. Kerbs argued the Lebanon plaintiff was an inadequate representative because differences between the consumer protection and PIP statutes in Washington and Illinois created a conflict of interest. Chan now attempts to revive those same claims that were raised, litigated, and decided in the Illinois trial and

appellate courts.[43]  Chan's collateral attack fails.  The <u>Lebanon</u> settlement is entitled to full faith and credit.[44]

Therefore, we reverse.

WE CONCUR:

---

[43] To the extent Chan suggests Washington class action standards are different than Illinois, he provides no authority that the due process standards applicable to class action settlements vary.

[44] We deny Liberty's motion to strike Chan's statement of additional authorities.